Good morning. I'm William Weiss and I represent the plaintiff and appellant in this matter. And I guess this case asks the question at first, insofar as Mr. Warner is concerned, when is a cop not a cop? And the whole issue of, we argue, of Mr. Warner being considered to be acting under coloristate law stem right from the facts at the scene after Mr. Warner starts beating up the plaintiff and people are trying to take him off, his friends announce that he's a cop and it's police business and stay back. The plaintiff also says that Mr. Warner and some other deputy sheriffs who arrived on the scene discouraged witnesses. It wasn't just the friend of Mr. Warner, the probation officer, who told people it's police business, stay back. It was also that there were deputies there, right there at the scene. And we have testimony also from Mr. Anderson that Mr. Wagner said in response to a question from Anderson, I am a cop. Mr. Warner, yes, that's true. He did. Mr. Anderson, while he was kind of laying there, semi-conscious, heard all this and said, you're a cop. He said, yes, I am. And then Mr. Anderson made some comment about Rodney King and then when more people converged on him, Mr. Warner got behind him and put him in a chokehold and told him that just to be quiet and not say anything. So I know that there's been a lot of discussion about what is a cop and a peace officer, but there is I couldn't really find any definition of cop that would be covered by the penal code, which defines the various categories of peace officers and public officers and so on. So we argue that when he said cop, he was inferring that he was at least some sort of law enforcement officer. Is identification enough under these circumstances? I'm sorry, identification enough of your employment enough? Oh, the issue is like I understand Judge Patel also brought that up, meaning that like he could have been a janitor for the county if he just says, well, I'm a police officer just because he works for the county says it doesn't automatically make it under colorist state law. Well, let's say let's say he said, I'm a priest. And does that make the church liable for his for his conduct? Not necessarily. I don't know about that. I'm not an expert on canon law, but let me let me just put it this way. I look for a judge and say, you know, I'm a judge. I say, well, he's a judge. Back off. No, I mean, I make the judiciary liable. That's a good point. And that that is a difficult issue to wrestle with. So I looked at the Penal Code 831.5, which defines custodial officer as a public officer, not a peace officer. And then they mention certain counties. They don't mention Mendocino. They say or a county having a population of 425,000 or less. And there's been no evidence of the population of Mendocino County. So even under the Penal Code, when you look at it, there still is a little confusion about whether he's a custodial officer or a peace officer. That's not very well. It's not clear under the law. But we can take judicial notice. I mean, if that's the if that's the sole issue, what's the population of Mendocino County who can take judicial notice under the Federal Rules of Evidence 201 as to what the population, couldn't we? You could if someone proffered that, but no one has. And so we're left with this confusion over, you know, whether he is a custodial officer or a peace officer. But then also when you look at some of the duties under 831.5, he may make warrantless arrests pursuant to Penal Code 836.5. And so one has to wonder, since this is a summary judgment, what he's doing at the scene. Warner testifies the first thing he was worried about was that Anderson was going to flee. So he goes to stop him from doing it. And then he starts beating him up. And all this information comes out that he's a cop. But he and in 831.5, it says he can make warrantless arrests only during the duration of his job. And I didn't find any cases defining duration of job. But there's another Penal Code section, 830.1, where they talk about deputy sheriffs making arrests. And they say you can do it while engaged in the performance of the duties of his or her respective employment. But they don't say that in 831.5. Well, is that your position that Warner was trying to arrest Mr. Anderson? Well, we don't know what he was trying to do. He says he was trying to stop him from doing it. So there's no indication that he said you're under arrest or he got out of his handcuffs or anything of that nature. Is that right? True. But he says that he thinks Anderson was fleeing the scene and he wanted to detain him. Then he loses his cool and just starts beating him. And there was some initial claim that maybe Anderson put up his hands or did something. That was later, you know, abandoned after so many witnesses came forth. And so when you look at 836.5 of the Penal Code, you're talking about public officers and employees who can arrest a person without a warrant. And so there is some authority, vaguely so, but nevertheless in the Penal Code that even Warner, if you considered him only a custodial officer, that he still has the power to make arrests. He says he wants to he doesn't want him to leave. He says, get out of your car, take your seatbelt off. But then he loses it and starts punching him. But the whole premise of your case is that whatever Mr. Warner did, he was not authorized to do. Otherwise, you don't have any 1983 cause of action put into one side under color of state law. Assuming there is under color of state law, the only way you have a good 1983 action is that he's doing something wrong. And I'm quite sure that there's going to be nothing in California law or Mendocino County law that says you can beat people up. So your whole premise is that he's doing something he's not supposed to be doing. That's the whole premise of 1983. So I don't know that you need to get into saying, well, whether he's authorized to do this or do that, because your premise is he's doing something he's not authorized to do. Right. And I don't believe any peace officers authorized to start beating a suspect for no reason. So that's the that's the whole Fourth Amendment aspect of it. I mean, that was the was the Connor Graham versus Connor case that the late chief justice authored. He says that excessive force cases are Fourth Amendment violations primarily. So let me say I want to say a few words about the county because they're also a defendant. And we say that the county's constitutional violation started right at the scene of the incident. Sheriff deputies show up according to what the plaintiff says. They were telling people they were discouraging people from being witnesses. Then they they don't arrest Mr. Warner. They say you're free to go. They don't give many alcohol or drug tests. And a very interesting thing in the investigation report, because there was all this talk of saying he's a cop, he's not a cop. The sheriff's deputy, Caudillo, says, well, and this is an excerpt. Did you say you're a peace officer? And Warner very articulately says, no, I never said I was a peace officer. So they started setting this thing up right from the beginning. The undersheriff's at the scene of this. Why is the undersheriff going down there? He reports to the sheriff. And then the sheriff, you know, counsel raised this point in his brief and I read it yesterday. It kind of scared me. So I reread everything again. He says we're arguing that they failed to do an investigation. What constitutional violation is that? We're not saying that. We're saying that the sheriff conducted presided over a cover up. And it started right from the beginning. He got the undersheriff down there. They start asking questions about being a, quote, peace officer. No one mentions the word cop. Then. How does a cover up violate your constitutional, your client's constitutional rights? Okay. Well, it's showing deliberate indifference to the actions of the, of the employee. Okay. So they're, in a sense, making themselves liable for the Fourth Amendment violation. And I would also say the Fourteenth Amendment violation in that they're denying due process to Mr. Courts. During this, the sheriff says, and this is also in the excerpts, I was real worried about this, you know, looking like it was rigged. So what does he do? He personally calls a district attorney, tells them about it. Oh, we got to investigate this. And what do they do with Warner? He doesn't get arraigned. He never gets arrested. He gets diversion. He doesn't get a fine. He doesn't have to do counseling. He doesn't get anything. He just has to have no light conduct for a year and everything is expunged. The sheriff arranged that. Okay. The sheriff doesn't suspend him. So the sheriff, who is the final policymaker, and he says that in his deposition, it's in our brief. So under, you know, the standards for deliberate indifference, he's the final policymaker. He decides that he's going to cover this up. He personally calls the DA. He says he's got the undersheriff down there. They're, you know, making reports about peace officer and getting away from this word cop. So he does everything like that to cover it up. So we say that that's deliberate indifference. And by that deliberate indifference, he, therefore, has ratified and approved the acts of the employee who was out there beating someone up. And we say that's deliberate indifference. You've got about 30 seconds left. Do you want to save some for rebuttal? Okay. I will. Thank you. Good morning. Doug Losek, Deputy County Counsel on behalf of the County Mendocino. May it please the Court. I heard the appellant's counsel state a lot of facts that I don't recall ever seeing in a record or before the lower court regarding the alleged, as he calls it, cover-up or improper investigation. The words back and forth between Appellee Warner and the police officers at the scene is nowhere in the record that I can recall ever seeing. The issues about the deputy at the scene at the time of the assault, that's the first time I've ever heard that. Nowhere in the record does it ever say that there was any other Mendocino County employee there other than Mr. Warner and his friend who happened to be a probation employee. The issue here is clear, is that was he acting in the coarsen scope of his duty? Is that really the issue? I mean, if he pretends to be under color of law, does it matter whether or not he is under color of law? I don't think. I think it does. I understand the argument that they just identified him as a cop and you shouldn't draw anything from that. But there was more than that in this case. And because of summary judgment, we draw all the inferences in the plaintiff's favor. Not to say that it's true or not, but if we're drawing the inferences, people were at the scene or somebody at the scene said, this is police business. And then he said, are you a cop? I'm detaining you. Puts him in a chokehold, at least purported to act under color of law in some aspects at the event. How do you respond to that? I don't think it's any different than if a janitor or someone else, another county employee did the same thing. Would he be acting under color of law simply because he says he's a police officer or she's a police officer? I don't think it. Well, now he didn't say I'm a police officer. He said I'm a cop. Said I'm a cop. The allegation is that he said he's a cop. Yeah. And what does cop mean in ordinary parlance? I think anyone on the street would take it to mean that they're a police officer. Would it also include in ordinary parlance, he's a lieutenant who runs the jail, wears a badge, has a uniform, can carry a gun, certainly does carry a gun when transporting prisoners? Is that a misuse of the word cop? I believe it is. And I don't believe that it's used in that way. I deal with the current jail commander all the time and never hear him referred to as a cop or a police officer. Just a jail commander, a corrections officer. What if someone had said, what if he had said not I'm a cop? He had said I am a lieutenant at the jail and I carry weapons and I'm authorized to do this. And then he starts beating him up. Is that acting under color of state law? No. Because he doesn't, he's not, he's not doing anything that he has any authority and he's not even overstepping his bounds. He has no authority. But then that comes back to my question. The very premise of a 1983 suit is that the person is acting outside his authority. Otherwise there's no liability. Even if I'm acting under color of state law, assume that I'm acting under color of state law. The 1983 suit says, number one, I'm acting under color of state law and I'm abusing my authority. I'm doing something I'm not authorized to do. So the mere fact that you're not authorized to do it doesn't mean you're no longer acting under color of state law. Otherwise, there is no such thing as a 1983 suit. Is the county liable if I am at a bar and I'm drinking and I go up to somebody and say, I'm a county, I'm a county council and I'm authorized to beat you up and I'm going to beat you up and I start doing it. Is the county liable for that? I wouldn't advise it. If you're asking for an advisory opinion. We'll see you up here on that one. But I think it's any county employee who says they're a cop or whatever they say they are and they start doing something. I don't think the county is liable just because they're a county employee. But that may be right. And the extreme example may be you doing it or a janitor doing it, someone who clearly has not, whose job definition by any definition doesn't really come in under the heading of cop. Is it a question of proof? And I don't know the answer to this question. Is it a question of proof as to how a person on the street might construe the word cop or might construe this guy's position when I asked, you know, do we want to ask 10 people on the street? This guy has the following job. Is he a cop, yes or no? I don't think so. Is that a factual question? I don't think so because the California legislature took great pains to say who is and who isn't a peace officer, when they are, when they're not. But they didn't take great pains to say who is and who isn't a cop. That's not a definition in the statute. Correct. But 830.831.5 says this section shall not be construed to grant any authority to the custodial officer except while on duty. Except while on duty. He has no authority to do anything except while on duty. But, of course, but, of course, if we had a genuine peace officer, a cop under your definition of cop, so we can't quarrel about whether he's a cop. He's a peace officer who's not on duty, who this happens to. He gets hit from behind. He comes storming out of his truck. I may be except for a purpose of argument. I'm describing this accurately. He says, I'm a cop. Everybody stand back and starts beating the guy up. I assume he's acting under color of state law. Is that right? I would have to argue differently simply because there's law that says just because somebody is a peace officer and does something, it's not always under. No, but he comes out of his car and he says, I am a policeman. He says to the crowd, you stand back. This is police business. And he starts beating up the man. If he's a police officer. Most likely going to be that the county is liable. Yeah, I think that's right. Now, the only difference between that example and this one is he's not a peace officer. He's a public officer. And he's a lieutenant at the jail. Right. And he has no authority to do anything outside of the jail. Right. No authority any more than a janitor does. You know, I'm not sure that that really gets you anywhere. I mean, just to use an analogy, it's not a perfect analogy. But for example, the cases we have where we have the media riding along on us on an illegal search and the media can be held liable. Sometimes held acting under color of law, even though they're not employed, even arguably by by the state. So I'm not sure the employment relationship has much, you know, is definitive on that. And we've had cases that have said that that that the color of law can stretch that far to non employees as long as their appearance or as an agreement to proceed under law. So that's I mean, that's a difficult. It's a it's an interesting question in this case, whether identification is enough, whether you need an identification plus and whether or not the facts in this case stretch that far. And I simply I don't think they do. He was he's a custodial officer. He's nothing other than a county employee. The other with the. News people coming going with it's an imperfect analogy. But let's go at this from a sort of a common sense or policy standpoint, leaving to one side the possible liability of the county and the sheriff's department. I'm not talking about that. I'm only talking about the liability, the personal liability in the 1983 suit of Mr. Warner. Why is it wrong to take someone and hold that person responsible when that person. And now, again, I'm not sure I'm giving you the facts of this case. I'm trying to make it clean in this respect. So I'm not asking you to agree to this set of facts. Someone impersonates a police officer, dresses up in the uniform of a police officer. And because he looks like a police officer is carrying a badge is given the deference to a police officer. And he then starts beating people up. I'm only suing him. I'm not suing his employer. Why is he vulnerable? Why is he protected against a suit that says acting under color of state law? Of course, he's in a sense impersonating. He wants to beat everybody to understand that he's a police officer. Now, it's not true. But why should he be shielded from liability for a cause of action that says acting under color of state law? Because there's other remedies for the individual. They can go to state court and sue him for the battery, for the assault. That's always true under 1983. There are always other remedies as well. Correct. But simply because somebody is pretending to be a police officer, does that make him fall under acting under color of state law? I mean, that's the question. And I think the case law clearly says no. Just because they're saying they're acting under color of state law or pretending to act under color of state law does not mean that they're doing it. Which the under color of doesn't mean acting legitimately pursuant to state law. It means acting under color of state law. So somebody looking at the person, hearing the person thinks that they are, in fact, a state officer. It's well, in what's for a second, they say that involves color of law, involves the power, use of power possessed by virtue of state law and made possible only because he's closed the wrong door is closed in that power. I don't think it matters what somebody's perception doesn't matter. I think it has to actually be that he has that power. Well, if he uses the power that supposedly I mean, that's that's the question I think here is that if if the events the events probably would have had it taken a different course had not the at least as as we infer the facts in the light most favorable to plan if we if we take the most favorable inference from that, then there the course of events would have been different because they allegedly said stay back. He's a police officer. Let him hit him. And people respond differently to the cloak of authority as opposed to two people getting into a road rage fight. One person didn't in this case. And the whole assault took, I believe, a record of 30 seconds or less. I mean, it wasn't a very long. You can land a lot of punches in 30 seconds. You can. Yeah. Well, I think we understand your argument. It's an interesting case. So thank you. Thank you. And we'll hear their rebuttal. Just an answer to counsel's question. The remarks about peace officer and things at the scene are all taken from excerpts of the record. For example, the quote when when Mr. Warner was interviewed by Deputy Caudillo and reviewed by another officer, Wagner was on page 127 of the excerpt. So that's the whole point. That's where the nexus starts of the county starting to get involved in this. So as to disadvantage Mr. Anderson and protect themselves, which is what they did. I didn't bring your complaint with me. Did you plead ratification? We I think we do. Yes. We say that the acts of both of them that they they negligently trained and supervised him. I remember that counts. Negligent training and supervising. Paragraph. I can check. I just we do. Okay. Thank you. You say that. All right. Thank you very much. Very good. Thanks for your arguments today. We hear the next case on the oral argument.
judges: Thomas, W. Fletcher, Mahan